Pfeifer, J.,
dissenting.
{¶ 28} I agree with the majority’s statement that the Ohio Department of Transportation (“ODOT”) is “the foremost authority on the subject of highway improvements.” Majority opinion at ¶ 18. This case raises an important ques *64 tion: In what instances do the citizens of Ohio get the benefit of that expertise? That is, when does ODOT have a duty to live up to its own standards? The majority opinion fails to answer that central issue in the case, the issue that formed the basis of the trial court and appellate court decisions. This case is not about whether ODOT is immune from liability for the decisions that it makes concerning changes to roadways, but instead is about the standards to which ODOT is held in implementing the decisions it makes. I would hold in this case that when ODOT undertakes the improvement of an intersection, it must conform that improvement to its own standards contained in its current Location and Design Manual. ODOT does not have the discretion to not follow its own standards when improving an intersection.
{¶ 29} The Tenth District Court of Appeals, as the court assigned to review appeals from the Court of Claims, has developed a test to determine what sort of activity undertaken by ODOT triggers a duty for ODOT to conform a project to ODOT’s own modern standards. The majority accurately describes the Tenth District’s test: “ODOT’s duty to maintain does not encompass a duty to redesign or reconstruct public highways or to upgrade them to current design standards, but when ODOT engages in improving the public highways, it does have a duty to upgrade them to current design standards.” (Emphasis sic.) Majority opinion at ¶ 8. Thus, for example, in Estate of Morgan v. Ohio Dept. of Transp., 10th Dist. Franklin Nos. 10AP-362 and 10AP-382, 2010-Ohio-5969, 2010 WL 4968640, the court held that ODOT had no ongoing duty to modernize the design of the roadway at issue beyond how it was originally designed in 1939. The court concluded that the addition of guardrails — required under current standards— that might have saved the driver’s life and that of his infant child would have constituted an improvement rather than simply maintenance and that “[t]he duty to maintain does not include a duty to institute improvements.” Id. at ¶ 6 and 14.
{¶ 30} The central issue in the court below was whether ODOT’s addition of traffic-control devices constituted maintenance or improvement of the roadway. But the majority chooses not to directly address the Tenth District’s longstanding test in this case. As the majority relates, ODOT does not quarrel with the Tenth District’s holding that the project undertaken by ODOT in this case was an improvement. Majority opinion at ¶ 9. And the majority acknowledges that when ODOT “decides to improve an existing highway, it has a duty to execute that decision in accordance with current construction standards.” Majority opinion at paragraph three of the syllabus. But the majority sees this case as being about three separate ODOT decisions: “(1) its decision to improve a particular portion of the intersection, (2) its decision not to improve other portions of the intersection, and (3) its decision regarding what type of improvement — i.e., advance-warning signs and red and yellow flashing lights — to make to the intersection.” (Emphasis deleted.) Majority opinion at ¶ 17.
*65 {¶ 31} To the contrary, ODOT made only one decision here: it decided to improve the intersection. That decision led to the core issue in this case: To what standard is ODOT held in implementing that decision? I disagree with the majority’s determination that ODOT’s decision to improve an intersection can consist of decisions to improve some aspects of the intersection and not to improve other aspects of the intersection, to meet safety standards in one regard but not in another.
{¶ 32} An intersection necessarily consists of more than one road. An “intersection” is defined as
[t]he area embraced within the prolongation or connection of the lateral curb lines, or, if none, the lateral boundary lines of the roadways of two highways that join one another at, or approximately at, right angles, or the area within which vehicles traveling upon different highways that join at any other angle might come into conflict.
R.C. 4511.01(KK)(1). ODOT undertook the project of improving the intersection, not improving one discrete part of one highway. The entire intersection was the object of ODOT’s improvement in this case; ODOT added a flashing traffic signal that affected travel on both highways (a yellow flashing light for traffic moving east and west on State Route 32 and a red flashing light for traffic moving north and south on State Route 220). That improvement triggered ODOT’s duty to conform the improvement of the intersection to the requirements of the Location and Design Manual applicable at the time the improvement was made, including the manual’s requirements on intersection sight distance. To slightly amend the third syllabus paragraph of the majority decision, when ODOT decides to improve an existing intersection, it has a duty to execute that decision in accordance with current construction standards.
{¶ 33} It should not be assumed that a change in standards in intersection sight distance necessarily requires a major revamping, such as regrading, of one or both highways making up an intersection. Much more modest improvements are acceptable. The current ODOT manual states that “[i]f the intersection sight distance cannot be attained, additional safety measures should be provided. These may include, but are not limited to, advance warning signs and flashers and/or reduced speed limit zones in the vicinity of the intersection.” https://www. dot.state.oh.us/Divisions/Engineering/Roadway/DesignStandards/roadway/Lo cation% 20and% 20Design% 20ManuaVEntire_ManuaLJuly_2015.pdf, Section 201.3, at 2-2 (accessed Oct. 20, 2015).
{¶ 34} Whether to upgrade an intersection is part of ODOT’s discretionary function. But it is not within the discretion of ODOT to ignore its own standards *66 once it does undertake a highway improvement. I would affirm the decision of the court of appeals.
Douglas J. Blue, for appellees.
Michael DeWine, Attorney General, Eric E. Murphy, State Solicitor, Michael J. Hendershot, Chief Deputy Solicitor, William C. Becker, Principal Assistant Attorney General, and Amy S. Brown, Associate Assistant Attorney General, for appellant.
Giorgianni Law, L.L.C., and Paul Giorgianni, urging affirmance for amicus curiae, the Ohio Association for Justice.
French and O’Neill, JJ., concur in the foregoing opinion.